Robert V. Closson, Esq. (SBN 125646)
bclosson@hirschclosson.com
Christopher T. Hicks, Esq. (SBN 300462)
chicks@hirschclosson.com
HIRSCH CLOSSON, APLC
5030 Camino de la Siesta, Suite 300
San Diego, CA 92108
Telephone (619) 233-7006
Facsimile (925) 935-9825

Attorneys for Plaintiff,
TOWN OF APPLE VALLEY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| TOWN OF APPLE VALLEY, | CASE NO: 5:24-cv-01244-CV-SHK |
|---|---|
| Plaintiff, | **THE PARTIES' JOINT BRIEF IN SUPPORT OF JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| NATIONWIDE MUTUAL INSURANCE COMPANY, an Ohio Corporation, and DOES 1 – 25, inclusive, | *[Filed concurrently with the Notice of Motion, Joint Appendix of Evidence, Joint Appendix of Facts, and Joint Stipulation of Authenticity]* |
| Defendants. | Date:    May 23, 2025<br>Time:    1:30 p.m.<br>Crtrm.:  5D (5th Floor)<br>Judge:   Hon. Cynthia Valenzuela |

# TABLE OF CONTENTS

I.    TAV'S INTRODUCTION ...................................................................... 1

II.   NATIONWIDE'S INTRODUCTION .................................................... 2

III.  STANDARD FOR SUMMARY JUDGMENT .................................... 3

IV.  TAV'S FACTUAL BACKGROUND .................................................. 4

    A.    The Nationwide Policy ............................................................ 4

    B.    The Facility Use Agreement .................................................... 5

    C.    Nationwide's Additional Facts Regarding the Facility Use Agreement .......................................................................... 5

    D.    The Underlying Action ........................................................... 6

    E.    Nationwide's Additional Facts Regarding the Underlying Action .................................................................... 7

    F.    TAV's Tenders to Nationwide and Nationwide's Denial of Coverage ........................................................................... 7

    G.    Nationwide's Additional Facts Regarding the Denial of Coverage ........................................................................... 9

    H.    AV Heat Named as DOE 1 in the Underlying Action ........................ 10

    I.    Nationwide's Additional Facts Regarding the Underlying Action .................................................................... 11

V.    TAV'S LEGAL ARGUMENT: NATIONWIDE HAS A DUTY TO DEFEND TAV AS AN ADDITIONAL INSURED UNDER THE POLICY .......................................................................................... 11

    A.    Insurance Contracts Under California Law ........................................ 11

        1.    Interpretation of Insurance Policies ........................................... 11

        2.    The Duty to Defend is Extremely Broad and is Triggered By A Mere POTENTIAL for Coverage .................................. 12

    B.    Nationwide Owes a Duty to Defend TAV Under the Policy ............ 13

*i*

1. **TAV's Liability Was at Least Potentially Caused, in Whole or in Part, by AV HEAT's Acts or Omissions During Its Ongoing Operations**.....................................14

2. **TAV's Liability Was at Least Potentially Caused, in Whole or in   Part, by AV HEAT's Acts or Omission in Connection With the Field**............................................18

C. **Nationwide's Defense of AV Heat in the Underlying Action Itself Demonstrates That It Must Defend TAV as an Additional Insured**.............................................21

VI. **NATIONWIDE'S LEGAL ARGUMENT: NATIONWIDE HAS NO DUTY TO DEFEND TAV**............................................23

A. **Insurance Contracts Under California Law**...................23

1. **Interpretation of Insurance Policies** ........................23

2. **The Duty to Defend**................................................24

B. **Nationwide Does Not Owe a Duty to Defend TAV**. ...........24

1. **The Accident Was Not Caused By AV Heat's Ongoing Operations**. ..............................................25

2. **The Accident Was Not Caused By AV Heat's Acts or Omissions in Connection With the Premises It Rented**. .........31

3. **Nationwide's Defense of AV Heat Does Not Require It to Defend TAV**.....................................34

VII. **TAV'S CONCLUSION**...............................................35

VIII. **NATIONWIDE'S CONCLUSION** ................................35

# TABLE OF AUTHORITIES

**CASES**

*Acceptance Ins. Co. v. Syufy Enterprises*, 69 Cal.App.4th 321 (1999).....18, 28, 29, 30

*A-H Plating, Inc. v. American National Fire Ins. Co.*, 57 Cal.App.4th 427 (1997)....................................................................................................20

*American States Ins. Co. v. Progressive Casualty Ins. Co.*, 180 Cal.App.4th 18 (2009)....................................................................................................13

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986)..............................................3

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).................................................3

*Christ the King Regional High Sch. v. Zurich Ins. Co. of N. Am.*, 91 A.D.3d 806 (N.Y. App. 2012)..................................................................................30

*Continental Casualty Co. v. Richmond*, 763 F.2d 1076 (9th Cir.1985).......19

*Davis v. Farmers Ins. Group*, 134 Cal.App.4th 100 (2005)..........................18

*Fairchild v. National Home Ins. Co.*, 17 Fed.Appx. 631 (9th Cir. 2001)....19

*Federal Ins. Co. v. National Union Fire Ins. Co. of Pittsburg*, 928 F.2d 408 (9th Cir. 1991)...................................................................................12, 24

*Fibreboard Corp. v. Hartford Accident & Indemnity Co.*, 16 Cal.App.4th 492 (1993)..................................................................................................18

*Fireman's Fund Ins. Co. v. Discovery Prop. & Cas. Ins. Co.*, No. C 08-03079 WHA, 2009 WL 2591394 (N.D. Cal. Aug. 21, 2009).............31, 32

*Foster-Gardner, Inc. v. National Union Fire Ins. Co.*, 18 Cal.4th 857 (1998)...........23

*Gray v. Zurich Ins. Co.*, 65 Cal.2d 263 (1966).............................................35

*Gunderson v. Fire Ins. Exch.*, 37 Cal.App.4th 1106 (1995)..........................34

*Han v. Mobil Oil Corp.*, 73 F.3d 872 (9th Cir. 1995)...................................11

*Homestead Ins. Co. v. Ryness Co.*, 15 F.3d 1085 (9th Cir. 1994)................19

*Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076 (1993)......................13

*Hurley Constr. Co. v. State Farm Fire & Cas. Co.*, 10 Cal.App.4th 533 (1992)....................................................................................................34

*La Jolla Beach & Tennis Club, Inc. v. Indus. Indem. Co.*, 9 Cal.4th 27 (1994)..............................................................................................................24

*MacKinnon v. Truck Ins. Exchange*, 31 Cal.4th 635 (2003) ................................. 11, 23

*Marquez Knolls Property Owners Assn., Inc. v. Executive Risk Indemnity, Inc.*, 153 Cal.App.4th 228 (2007)........................................................................ 19

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)............3

*Minges Creek v. Royal Ins. Co. of Am.*, 442 F.3d 953 (6th Cir. 2006) ........................32

*Mirpad, LLC v. California Ins. Guarantee Assn.*, 132 Cal.App.4th 1058 (2005)..........................................................................................................13, 24

*Misiti, LLC v. Travelers Prop. Cas. Co. of Am.*, 33 A.3d 783 (Conn. App. 2011)..............................................................................................................32

*Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287 (1993).....................13, 24

*National Union Fire Ins. Co. v. Seagate Technology, Inc.*, No. C 04-01593 JW, 2008 WL 11383677 (N.D. Cal. May 8, 2008).............................................4

*Northbrook Ins. Co. v. Am. States Ins. Co.*, 495 N.W.2d 450 (Minn. App. 1993)..............................................................................................................33

*Pardee Const. Co. v. Ins. Co. of the West*, 77 Cal.App.4th 1340 (2000) ....................12

*Pension Trust Fund for Operating Engineers v. Federal Ins. Co.*, 307 F.3d 944 (9th Cir. 2002) ....................................................................................... 12

*Powerine Oil Co. v. Superior Court*, 37 Cal.4th 377 (2005).......................................23

*Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal.3d 903 (1986).............. 11, 23

*Pulte Home Corp. v. American Safety Indemnity Co.*, 14 Cal.App.5th 1086 (2017)........................................................................................................... 12

*Rensselear Polytechnic Institute v. Zurich Am. Ins. Co.*, 176 A.D.2d 1156 (N.Y. App. 1991)........................................................................................32

*Scottish & York Int'l Ins. Gr. v. Ensign Ins. Co.*, 709 P.2d 397 (Wash. App. 1985).......................................................................................................30, 31

*Scottsdale Ins. Co. v. MV Transportation*, 36 Cal.4th 643 (2005) ........................ 12, 24

*Stanford University Hosp. v. Federal Ins. Co.*, 174 F.3d 1077 (9th Cir. 1999) ............ 4

*State Farm Mut. Auto. Ins. Co. v. Jacober*, 10 Cal.3d 193 (1973) .............................. 16

*State Farm Mut. Co. v. Partridge*, 10 Cal.3d 94 (1973) ............................................... 11

*Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730 (9th Cir. 1979) ....................... 4

*Transcon. Ins. Co. v. Ins. Co. of the State of Pa.*, 148 Cal.App.4th 1296 (2007) ............................................................................................................................. 31

*Waller v. Truck Ins. Exchange Inc.*, 11 Cal.4th 1 (1995) ................................................ 4

**STATUTES**

CCP § 377.30 .................................................................................................................... 6

CCP § 377.60 .................................................................................................................... 6

**RULES**

Fed. R. Civ. P. 56(a) ......................................................................................................... 3

Plaintiff Town of Apple Valley ("TAV") and Defendant Nationwide Mutual Insurance Company ("Nationwide") hereby jointly submit the following Joint Brief pursuant to the Court's Order Regarding Motions for Summary Judgment [Dkt. 33], wherein TAV moves for partial summary judgment on the sole issue of Nationwide's duty to defend TAV in the subject Underlying Action as an additional insured under the hereinafter defined Policy.

Should the Court determine that Nationwide does not have a duty to defend TAV in the Underlying Action, Nationwide respectfully requests that the Court *sua sponte* enter summary judgment in favor of Nationwide, consistent with the Court's February 14, 2025 Standing Order. (*See* Dkt. No. 28 at 11.)

## I.   TAV'S INTRODUCTION

This dispute arises from Nationwide's unequivocal failure to uphold its duty to defend TAV as an additional insured under the policy it issued to Apple Valley Rebels Youth Football & Cheer dba AV Heat ("AV Heat"). On October 19, 2021, a tragic accident claimed the life of Lawrence Andrews III, a minor (hereinafter, "the decedent"), when he was struck by a speeding vehicle while crossing Ottawa Road, adjacent to Field #8 ("Field") at the James A. Woody Community Center and Park ("Park"). The accident occurred immediately following an AV Heat-organized football game, during which AV Heat allegedly failed to ensure safe parking and supervision as required under its Facility Use Agreement ("FUA") with TAV.

Nationwide's refusal to defend TAV ignores both its contractual obligations under the subject Additional Insured Endorsement in the Policy and the broad scope of California's duty to defend law, which requires defense when liability is even potentially caused, in whole or in part, by the acts or omissions of AV Heat in the performance of AV Heat's ongoing operations or in connection with the Field. The facts of this case unequivocally establish such potential. The decedent had attended AV Heat's football practice at the Field, and the accident occurred immediately thereafter during his departure—a scenario clearly incidental to AV Heat's ongoing

Case No. 5:24-cv-1244-CV-SHK
THE PARTIES' JOINT BRIEF IN SUPPORT
OF JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT

operations. Additionally, AV Heat's admitted failure to instruct participants and guests to park in designated, safe areas, as mandated by the FUA, at least potentially, caused or contributed to the accident.

Moreover, the underlying plaintiffs expressly confirmed their understanding that TAV delegated safety responsibilities at the park and adjoining areas to AV Heat under the FUA, which was the basis for adding AV Heat as DOE 1, further cementing the connection between AV Heat's acts or omissions and the accident. Nationwide's position is particularly untenable given its simultaneous decision to defend AV Heat in the same Underlying Action, thereby conceding the existence of potential liability arising from AV Heat's acts or omissions.

TAV respectfully urges this Court to grant its motion for partial summary judgment and order that Nationwide owes a duty to defend TAV in the Underlying Action as an additional insured under the Policy.

## II.    **NATIONWIDE'S INTRODUCTION**

TAV is not entitled to coverage under AV Heat's Nationwide policy for an underlying claim arising out of a tragic accident on a public roadway that has nothing more than a threadbare connection to AV Heat's operations. The Additional Insured Endorsement provides coverage only for claims alleging bodily injury caused by AV Heat's acts or omissions in the performance of its ongoing operations or in connection with the field AV Heat rented for football practice. The Underlying Action does not involve any such injury or claim.

Lawrence Andrews III was tragically killed when he was struck by a hit-and-run driver while crossing the street after leaving the Park. The underlying plaintiffs allege that, due to extremely limited onsite parking at the Park, patrons like the Andrews family are often forced to park off-site and must cross substantially unlighted streets with no marked crosswalks and no signage. They further allege that the street where Andrews was struck was unsafe and that TAV failed to properly and safely coordinate vehicular and pedestrian traffic near the Park.

But the underlying plaintiffs do not allege that the accident had anything to do with AV Heat—the underlying complaint does not once mention AV Heat by name. The underlying plaintiffs do not allege that the accident was due to AV Heat's operations. Nor do they allege that the accident had anything to do with AV Heat's use of the Field. Indeed, AV Heat's only connection to the accident is that Andrews happened to be at the Park coaching football practice before the accident. Such minimal connection is insufficient to establish that TAV's potential liability for the accident was caused by AV Heat's operations or use of the Field.

## III.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment or partial summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id*. The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts" (*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), and must instead "present affirmative evidence from which a jury could return a verdict in that party's favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

On summary judgment, the Court draws all reasonable factual inferences in favor of the non-movant. *Id*. at 255. In deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id*. However, conclusory and speculative testimony does not raise genuine issues of fact

and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

In a California diversity action courts must apply state law in interpreting the policy. *Stanford University Hosp. v. Federal Ins. Co.*, 174 F.3d 1077, 1083 (9th Cir. 1999). The interpretation of an insurance policy is a question of law. *Waller v. Truck Ins. Exchange Inc.*, 11 Cal.4th 1, 18 (1995). It is well settled that "[w]hether an insurer has a duty to defend is a proper subject for summary judgment." *National Union Fire Ins. Co. v. Seagate Technology, Inc.*, No. C 04-01593 JW, 2008 WL 11383677, at *4 (N.D. Cal. May 8, 2008).

## IV.    TAV'S FACTUAL BACKGROUND

### A.    The Nationwide Policy

Nationwide issued commercial general liability policy number RPG7258600 to AV Heat, effective December 14, 2020 to December 14, 2021 (the "Policy"). (Joint Appendix of Facts ("JAF") 1.) The Policy's Insuring Agreement provides that Nationwide "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies," and that Nationwide "will have the right and duty to defend the insured against any 'suit' seeking those damages." (JAF 2.)

The Policy includes endorsement CG 20 26 04 13 titled "Additional Insured – Designated Person or Organization" ("AI Endorsement") which amends Section II – Who Is An Insured in the Policy "to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for 'bodily injury', 'property damage' or 'personal and advertising injury' caused, in whole or in part, by [AV Heat's] acts or omissions or the acts or omissions of those acting on [AV Heat's] behalf: [¶] 1. In the performance of [AV Heat's] ongoing operations; or [¶] In connection with [AV Heat's] premises owned by or rented to [AV Heat]." (JAF 4.) The subject AI Endorsement expressly identifies TAV in the Schedule. (JAF 5-7.)

/ / /

Case No. 5:24-cv-1244-CV-SHK
THE PARTIES' JOINT BRIEF IN SUPPORT
OF JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT

**B.     The Facility Use Agreement**

TAV entered the FUA with AV Heat in April 2021, wherein TAV agreed to permit AV Heat to utilize the Field at the Park for football practice on specified days between 6:00pm and 8:00pm subject to the terms of the FUA, which included October 19, 2021. (JAF 8-10, 12.) AV Heat's use of the Field was pursuant to the FUA, which states that AV Heat is to indemnify, defend and hold harmless TAV from any and all causes of action, claims, liabilities, obligations, judgments, or damages, including reasonable attorneys' fees, arising out of any and all "activities." (JAF 11.)

The Rules and Regulations on the back of the FUA further provide that:

12.     The Town of Apple Valley is not responsible for injuries or damage to the Lessee or guests of the Lessee or loss of personal property left in or on the premises.

13.     Renter shall procure and maintain public liability insurance against any and all losses, costs, expenses, claims, liabilities, actions, or damages, **including liability for injuries to any person(s) or damage to property arising at any time during and/or arising out of or in any way connected with Renter's use or occupancy of the Town's facilities <u>and adjoining property</u>** in the amount of $1,000,000 (one million dollars) per occurrence. Such Insurance shall name the Town, Its officers, employees, and agents as additional insureds prior to the rental date of the facility…

* * *

17.     Renter is solely responsible for supervising all individuals at the facility and adjoining property during the event…

* * *

30.     Renter shall not drive motorized vehicles on ballfields or turf areas. Vehicles must be contained to designated public right of ways and parking lots.

(JAF 13 (emphasis added).)

Pursuant to the FUA, TAV received insurance certificates from AV Heat identifying Nationwide as TAV's additional insurer. (JAF 6-7.)

**C.     Nationwide's Additional Facts Regarding the Facility Use Agreement**

The Park consists of several ball fields, basketball courts, event rooms, playgrounds, and a skate park. (JAF 20.) AV Heat did not rent the entire Park; it rented only Field 8 for "football & cheer practices" from 6:00pm to 8:00pm, which the FUA specified "must include set-up time and take-down/clean-up time." (JAF 9, 42.)

The FUA provided that AV Heat is to "indemnify, defend and hold harmless" TAV from claims "arising from any and all activities, including damage to property, ***during such time as said facilities shall be used*** in accordance with this agreement." (JAF 11 (emphasis added to language omitted by TAV).)

**D.      The Underlying Action**

In 2022, TAV and DOES 1-100 were sued in an underlying action styled *Lawrence Andrews, Jr., et al. v. Town of Apple Valley, et al.*, San Bernardino Superior Court Case No. CIVSB2204565 ("Underlying Action") for damages including causes of action for negligence and wrongful death. (JAF 14.) The plaintiffs in the Underlying Action are the survivors of the decedent struck and killed by an automobile operated by Richard Goodro who negligently operated his vehicle at an excessive speed at the time of the accident, on or about 8:11 p.m. on October 19, 2021. (JAF 15-16.) The location of the accident was Ottawa Road in the Town of Apple Valley adjacent to the Field where the decedent had immediately beforehand been assisting his brother who was participating in an organized, scheduled football game conducted by AV Heat. (JAF 17-18, 27.)

A First Amended Complaint ("FAC") was filed on September 1, 2022, alleging (1) negligence, (2) wrongful death under CCP § 377.60 and (3) survival under CCP § 377.30. (JAF 14.) The FAC alleges that, "the Park is bounded on the southside by various commercial businesses and Ottawa Road….the Park is L-shaped and the land area where Field #8 is located extends from the northern border of the Park at Powhatan Road to the southern border of the Park at Ottawa Road…." (JAE 20.) It further alleges that, "the roads, lighting, crossing, and the surrounding area were negligently designed, <u>controlled</u>, installed, constructed, <u>overseen</u>, and <u>maintained</u> in an unsafe and improper manner by Defendants TOWN OF APPLE VALLEY and DOES 1-100…." (JAF 20.)

/ / /

**E.    Nationwide's Additional Facts Regarding the Underlying Action**

The FAC does not mention AV Heat and there are no specific allegations against AV Heat in the FAC. (JAF 46.) The FAC alleges that, "due to extremely limited parking facilities onsite" at the Park, "patrons are often forced to park off-site and must cross substantially unlighted streets with no marked cross-walks and no signage." (JAF 43.) It further alleges that "Defendant Town was responsible for maintaining and ensuring the safety of Decedent and family at and along the previously described street crossing on Ottawa Road" and "for properly and safely managing, operating, overseeing, and coordinating the travel of vehicles and pedestrians crossing" from the Park. (JAF 43.)

According to the FAC, at the time of the accident, the street was "in an improper, dangerous and/or defective condition" because the "roads, lighting, crossing, and the surrounding area were negligently designed, controlled, installed, constructed, overseen, and maintained in an unsafe and improper manner … in that vehicle speed restrictions are dangerously high for the purposes for which the [Park] exists, and traffic operations near and adjacent to the Park are not carried out in a safe, non-negligent and/or proper manner, which thereby caused the unreasonable risk of serious bodily injuries and death" to Andrews. (JAF 20, 43.)

In addition to the claims asserted against TAV, the FAC also alleges claims for negligence, negligence per se, wrongful death, and survival against the driver of the automobile that struck and killed Andrews. (JAF 44.) This driver has no alleged connection to or affiliation whatsoever with AV Heat (or TAV, for that matter). (JAF 45.)

**F.    TAV's Tenders to Nationwide and Nationwide's Denial of Coverage**

TAV tendered its defense and indemnity to Nationwide as an additional insured on April 28, 2023. (JAF 24.) On May 5, 2023, Nationwide adjuster James Nelon made a note in the claim file indicating: "The Tender received by the Town of Apple Valley is per the above noted [AI] Endorsement. This coverage would be only in respect to

Case No. 5:24-cv-1244-CV-SHK
THE PARTIES' JOINT BRIEF IN SUPPORT
OF JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT

the liability of the NI with regards to the BI, PD, PI/AI. The practice itself ended at 8PM and the accident occurred 20-30 minutes later. The decedent was not insured as a part of their roles within the league operated by the insured. [¶] ***The tender from the AI if accepted posed a potential of there only being a Duty to Defend*** and not a duty to Indemnify." (JAF 25 (emphasis added).)

On May 18, 2023, Nationwide denied coverage to TAV claiming "there is no claim at this time made against our named insured/policyholder and thus the Additional Insured Endorsement has not been triggered." (JAF 25-26.) The letter further claimed "Lawrence Andrews, III's death did not occur during an [AV Heat] game or practice or on the premises rented to them" and "[a]s such, Lawrence Andrews, III's death was not caused, in whole or in part, by the acts or omissions of [AV Heat]." (JAF 26.)

On July 14, 2023, TAV sent a letter to Nationwide requesting reconsideration of its denial and providing additional information to support its request. (JAF 28.) As part of that letter, TAV claimed as follows:

> In violation of paragraph 30 [of the FUA], **AV Heat <u>allowed</u> its guests and members to park in a dirt field which they had to cross Ottawa Road to access, rather than in safe, designated parking areas as required by the Facility Use Agreement**. That negligence alone is sufficient to constitute an error or omission, triggering the duty to defend TAV under the additional insured endorsement. **AV Heat's obligation to provide such supervision and control extended to the time of the incident. The "event" at least potentially includes arrival and departure of members and guests rather than necessarily being confined to the practice itself**. Further, the reference to "adjoining property" at least potentially includes Ottawa Road where the incident occurred. **Had AV Heat made arrangements to ensure that its members and guests were parking in the safe and designated areas referenced in paragraph 30 of the Facility Use Agreement, this tragic incident would not have occurred**.

(JAF 29 (emphasis added).)

Later that same day, Mr. Nelon, in conjunction with Paula Creel of K&K Insurance Group, Inc. ("K&K"), the claims administrator for the Policy, endeavored to "investigate" the above information. (JAF 30-33.) This "investigation" consisted of Ms. Creel sending a single email to Melissa Moon of AV Heat wherein she advised

that "[TAV] ha[s] asserted that the insured 'directed members to park in adjacent lots vs on the ground of the city own park'" and indicated that "We will need to know if there was any direction/instruction given to parents on where to park their vehicles when they came to practice and/or games." (JAF 31.)

On July 20, 2023, a Board Member of AV Heat, Mariko Soria, responded to Ms. Creel, wherein she advised that "The town does not explicitly state where overflow parking is for any sporting events held on the premises. The town is quite aware that their parking is insufficient due to the amount of community members using the park on any given night…. I have been a part of the [AV Heat] organization since 2014 and to my knowledge, parents have not been directed to park in the dirt lot by any board member or coach." (JAF 32.) Ms. Creel provided that email to Mr. Nelon the same day advising that "Attached is an email from the insured confirming that they do not instruct the parents where to park." (JAF 33.) On September 8, 2023, Nationwide reaffirmed its prior denial of coverage to TAV claiming, among other things, that "The FAC [in the Underlying Action] alleges that it was only the acts or omissions of co-defendant driver Goodro and codefendant TAV that caused the subject accident. There are no facts or allegations to establish that AV Heat had any responsibility for the condition causing the subject accident, or that any act or omission by AV Heat contributed to the accident… Moreover, the accident did not occur on the field leased to AV Heat or during the time that the field was leased to AV Heat." (JAF 34.)

**G.    Nationwide's Additional Facts Regarding the Denial of Coverage**

Prior to Nationwide's denial of coverage, AV Heat confirmed to Nationwide that, on the night of the accident, "there were many people within the vicinity as everyone was leaving practice at the time. The car was driving at excessive speeds through multiple people, swerved to miss other children before hitting Lawrence." (JAF 47.) AV Heat further confirmed that others were using the Park at the time of the accident, and that baseball games were going on at the same time. (JAF 48.)

9

AV Heat later confirmed that the accident "occurred after practice had ended and the kids had been released to their parents." (JAF 49.)

### H.   AV Heat Named as DOE 1 in the Underlying Action

On October 31, 2023, TAV filed a first amended cross-complaint in the Underlying Action against AV Heat and Mr. Goodro asserting causes of action for equitable indemnity, contribution, breach of express indemnity agreement and declaratory relief. (JAF 35.) On January 19, 2024, the underlying plaintiffs filed an amendment to their complaint in the Underlying Action identifying AV Heat as DOE 1–i.e., in the Underlying Action causes of action are asserted against AV Heat for negligence, wrongful death and survival relative to the incident resulting in the death of the decedent. (JAF 21-22.) Nationwide is currently defending AV Heat in the Underlying Action under the Policy while continuing to deny coverage to TAV. (JAF 23.)

On July 22, 2024, AV Heat filed a motion to quash service of summons of the underlying plaintiffs' DOE amendment in the Underlying Action claiming the amendment was untimely and does not allow for "relation back" to the filing of the original complaint because the underlying plaintiffs were not previously ignorant of AV Heat's potential culpability. (JAF 37.) The underlying plaintiffs filed an opposition to that motion in the Underlying Action on October 11, 2024, wherein their counsel advised that "[i]nitially, it was thought that the Town was solely responsible until I found that the Town of Apple Valley contractually delegated certain responsibilities, including the safety and security of the participants on the fields and in the parking lots, to AV Heat." (JAF 38.)

On October 24, 2024, the Court in the Underlying Action denied AV Heat's motion to quash, which establishes that the underlying plaintiffs have asserted viable causes of action against AV Heat relative to the accident resulting in the death of the decedent. (JAE 39.)

/ / /

**I.      Nationwide's Additional Facts Regarding the Underlying Action**

In October 2023, counsel for the underlying plaintiffs and TAV's counsel "discussed the prospect of bringing AV Heat into the case and discussed [TAV's] theories of the liability of AV Heat to [TAV]." (JAF 50.) Counsel for the underlying plaintiffs "made the decision to file a Doe amendment to Plaintiff's First Amended Complaint naming Defendant AV Heat as Doe 1 on January 17, 2024, the same day that Town of Apple Valley's counsel reached out to [him] to find out if Plaintiff was going to add AV Heat as a Defendant." (JAF 51.)

Even after adding AV Heat as a Doe defendant, the underlying FAC still does not mention AV Heat by name; nor does it assert any specific allegations against AV Heat. (JAF 46.)

**V.      TAV'S LEGAL ARGUMENT: NATIONWIDE HAS A DUTY TO DEFEND TAV AS AN ADDITIONAL INSURED UNDER THE POLICY**

**A.      Insurance Contracts Under California Law**

**1.      Interpretation of Insurance Policies**

"It is a basic principle of insurance contract interpretation that doubts, uncertainties and ambiguities arising out of policy language ordinarily should be resolved in favor of the insured in order to protect his reasonable expectation of coverage." *Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal.3d 903, 912 (1986). "The determination of whether a written contract is ambiguous is a question of law for the court." *Han v. Mobil Oil Corp.*, 73 F.3d 872, 877 (9th Cir. 1995). "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." *MacKinnon v. Truck Ins. Exchange*, 31 Cal.4th 635, 648 (2003). Further, "[c]overage clauses are interpreted broadly so as to afford the greatest possible protection to the insured, [whereas] exclusionary clauses are interpreted narrowly against the insurer." *State Farm Mut. Co. v. Partridge*, 10 Cal.3d 94, 101–02 (1973).

/ / /

## 2. The Duty to Defend is Extremely Broad and is Triggered By A Mere POTENTIAL for Coverage

"[T]he duty to defend an insured in California is extremely broad." *Federal Ins. Co. v. National Union Fire Ins. Co. of Pittsburg*, 928 F.2d 408 (9th Cir. 1991). "An insurer must defend its insured [or additional insured] against claims that create a *potential* for indemnity under the policy." *Scottsdale Ins. Co. v. MV Transportation*, 36 Cal.4th 643, 654 (2005) (emphasis in original).

"Determination of the duty to defend depends, in the first instance, on a comparison between the allegations of the complaint and the terms of the policy. But the duty also exists where extrinsic facts known to the insurer suggest that the claim may be covered. Moreover, that the precise causes of action pled by the third-party complaint may fall outside policy coverage does not excuse the duty to defend where, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability." *Id.* at 654 (internal citations omitted). "As to any [Additional Insured Endorsement], 'in resolving whether the allegations in a complaint give rise to coverage under a CGL policy, we must consider the occurrence language in the policy, as well as the endorsements, if any, that broaden coverage included in the policy terms.'" *Pulte Home Corp. v. American Safety Indemnity Co.*, 14 Cal.App.5th 1086, 1105 (2017) (*quoting Pardee Const. Co. v. Ins. Co. of the West*, 77 Cal.App.4th 1340, 1351 (2000). "The duty to defend does not usually turn on whether facts supporting a covered claim predominate or generate the claim. [Citation.] Instead, California courts have repeatedly found that remote facts buried within causes of action that may potentially give rise to coverage are sufficient to invoke the defense duty." *Pension Trust Fund for Operating Engineers v. Federal Ins. Co.*, 307 F.3d 944, 951 (9th Cir. 2002).

For TAV to establish that Nationwide owes it a duty to defend, TAV need only demonstrate the existence of a ***potential*** for coverage, while Nationwide must thereafter establish the complete absence of any such potential based on undisputed

facts. *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 300 (1993). "In resolving the question of whether a duty to defend exists—tendered in the context of a summary adjudication/summary judgment motion in a declaratory relief action—the insurer has a higher burden than the insured. '[T]he insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot'; the insurer, in other words, must present undisputed facts that eliminate any possibility of coverage." *American States Ins. Co. v. Progressive Casualty Ins. Co.*, 180 Cal.App.4th 18, 27 (2009) (Emphasis and citations omitted.) Further, "[i]f coverage depends on an unresolved dispute over a *factual* question, the very existence of that dispute would establish a possibility of coverage and thus a duty to defend." *Mirpad, LLC v. California Ins. Guarantee Assn.*, 132 Cal.App.4th 1058 (2005) (emphasis in original). Doubts as to whether an insurer has a duty to defend are resolved in the insured's favor. *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1081 (1993).

### B.    Nationwide Owes a Duty to Defend TAV Under the Policy

The AI Endorsement covers TAV as an additional insured, "with respect to liability for 'bodily injury'… caused, in whole or in part, by [AV Heat's] acts or omissions or the acts or omissions of those acting on [AV Heat's] behalf: [¶] 1. In the performance of [AV Heat's] ongoing operations; or [¶] In connection with [AV Heat's] premises owned by or rented to [AV Heat]." It is undisputed that the death of the decedent constitutes "bodily injury," and thus Nationwide is obligated to defend TAV as an additional insured under the Policy so long as there exists ***any possibility*** that its liability for the injuries alleged in the Underlying Action was caused, in whole ***or in part***, by the acts or omissions of AV Heat or others on its behalf during AV Heat's ongoing operations ***or*** in connection with the Field rented to AV Heat by TAV. TAV need only establish one such potential causal connection to trigger Nationwide's duty to defend. It cannot reasonably be argued that such a possibility is not present here, where even the underlying plaintiffs have expressly acknowledged that "it was

thought that the Town was solely responsible until [they] found that the Town of Apple Valley contractually delegated certain responsibilities, including the safety and security of the participants on the fields and in the parking lots, to AV Heat."

Indeed, Nationwide implicitly recognizes AV Heat's potential liability for the accident at issue in the Underlying Action by virtue of it providing a defense to AV Heat under the Policy, yet Nationwide inexplicably maintains its erroneous position that there is no coverage available to TAV as an additional insured because (1) the accident occurred approximately eleven minutes after AV Heat's football game was scheduled to end as indicated on the FUA while the decedent and his family were walking from the Field to their car immediately after the game, and therefore the accident could not have occurred during AV Heat's ongoing operations and/or (2) the accident did not physically occur on the Field and therefore the accident did not occur in connection with the Field.  Nationwide is wrong on both accounts.

        **1.**      **TAV's Liability Was <u>at Least Potentially</u> Caused, in Whole <u>or in Part</u>, by AV HEAT's Acts or Omissions During Its Ongoing Operations**

As set forth above, pursuant to the AI Endorsement in the Policy, Nationwide owes a duty to defend TAV in the Underlying Action as an additional insured so long as there exists any potential that TAV's liability for the death of the decedent was caused, in whole or in part, by the acts or omissions of AV Heat or anyone on its behalf in the performance of AV Heat's ongoing operations.  The phrase "ongoing operations" is not defined in the Policy and thus should be interpreted in its ordinary and popular sense. *MacKinnon*, 31 Cal.4th at 647.

TAV contends that "ongoing operations" is not narrowly confined solely to the football game conducted by AV Heat at the Field—i.e., that AV Heat's operations do not begin and end only while football practices/games are in session—but rather that such operations extend to those operations necessarily incidental to the use of the Field. Such ongoing operations would include, among other things, the arrival and

14

departure of AV Heat's participants and guests, including the decedent and the underlying plaintiffs. AV Heat itself acknowledges that such operations are incidental to the use of the Field by AV Heat and its participants, as the standard contract entered into between AV Heat and the parents of its participants for each season—which would have been required of the decedent if he was a player at the time rather than an assistant coach—includes a section which provides as follows: "I/We the parents/guardians of the minor named in Section II Candidate for a position on a [Southern California Junor All American Football and Cheer] Team, hereby give my/our approval to his/her participation in any and all SCJAAFC activities during the current season. I/We assume all risks and hazards incidental to such participation, *including transportation to and from such activities*." (JAF 19 (emphasis added).) Here, the accident occurred approximately eleven minutes after AV Heat's football game at the Field was scheduled to end while the decedent and his family were walking from the Field to their car parked across Ottawa Road which adjoins the Field. It cannot be proven, conclusively or otherwise, that AV Heat's "operations" were no longer ongoing at the time of the incident before its guests and participants, including the decedent and the underlying plaintiffs, had time to get to their vehicles immediately following the game. This is especially true given AV Heat's own understanding that transportation to and from its games is incidental to participation in its operations. This alone establishes Nationwide's duty to defend.

To the extent Nationwide contends that "ongoing operations" should instead be interpreted as only encompassing the practices/games themselves and/or the times for which AV Heat initially reserved the Field pursuant to the FUA (i.e., between 6:00pm and 8:00pm), such interpretation is myopic and unreasonable and should not be accepted. *Waller*, 11 Cal.4th at 18 ("A policy provision will be considered ambiguous when it is capable of two or more constructions, *both of which are reasonable*.") (Emphases added). In the alternative event this Court were to agree that both interpretations are reasonable (which TAV does not concede), then the phrase is

Case No. 5:24-cv-1244-CV-SHK
THE PARTIES' JOINT BRIEF IN SUPPORT
OF JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT

ambiguous and must be interpreted against Nationwide in favor of coverage. *Producers Dairy*, 41 Cal.3d at 912 ("It is a basic principle of insurance contract interpretation that doubts, uncertainties and ambiguities arising out of policy language ordinarily should be resolved in favor of the insured in order to protect his reasonable expectation of coverage.")

Moreover, the undefined phrase "ongoing operations" is used broadly in the AI Endorsement without constraining additional insured coverage to TAV for liability caused, in whole or in part, only by AV Heat's acts or omissions in the performance of its ongoing operations *at the Field*. Rather, it indicates that additional insurance is available to TAV where, as here, TAV's liability for the injuries at issue in the Underlying Action could potentially have been caused, in whole or in part, by the acts or omissions of AV Heat or others on its behalf "[i]n the performance of [its] ongoing operations" generally (i.e., without limitation). Had Nationwide desired to restrict additional insurance coverage to injuries caused by AV Heat only during the performance of certain ongoing operations, it could and should have done so, but it chose to instead use broad language which extends additional insurance coverage for those parties which face liability as the result of any of AV Heat's ongoing operations, whether or not such operations are performed in connection with premises rented to AV Heat. *See State Farm Mut. Auto. Ins. Co. v. Jacober*, 10 Cal.3d 193, 201-202 (1973) ("As we have declared time and again any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect; thus, the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language.") (Internal citations and quotation marks omitted.)

For example, to restrict coverage in the manner Nationwide contends, the AI Endorsement would need to be significantly modified to provide that TAV is an additional insured, "but only with respect to liability for 'bodily injury', 'property damage' or 'personal and advertising injury' caused, in whole or in part, by [AV Heat's] acts or omissions or the acts or omissions of those acting on [AV Heat's]

16

behalf: [¶] 1. In the performance of your ongoing operations *performed solely while you are physically located on the premises rented to you*." Having failed to phrase the limitations on the additional insurance afforded under the AI Endorsement in such a manner, Nationwide cannot now continue to deny a defense to TAV given the broad grant of additional insured coverage for injuries caused by the acts or omissions of AV Heat or others on its behalf in the performance of AV Heat's ongoing operations generally.

Finally, TAV has already outlined how the underlying accident and corresponding death of the decedent was, at least potentially, caused, in whole or in part, by the acts or omissions of AV Heat in the performance of its ongoing operations required of it pursuant to the FUA. Specifically, the FUA provides that "[AV Heat] is solely responsible for supervising all individuals at the facility and adjoining property during the event" and further requires that "[v]ehicles must be contained to designated public right of ways and parking lots." AV Heat and Nationwide have already confirmed that nobody from AV Heat instructs its participants or guests where to park for events held at the Field—i.e., AV Heat *omitted* to relay the requirement that all "[v]ehicles must be contained to designated right of ways and parking lots" to its participants and guests, including the decedent and the underlying plaintiffs—and the underlying plaintiffs specifically allege that the accident was caused because, among other things, "the roads, lighting, crossing, and the surrounding area were negligently designed, controlled, installed, constructed, overseen, and maintained in an unsafe and improper manner by Defendants TOWN OF APPLE VALLEY and [AV Heat and DOES 2-100]." The underlying plaintiffs have since expressly acknowledged that "it was thought that the Town was solely responsible until [they] found that the Town of Apple Valley contractually delegated certain responsibilities, including the safety and security of the participants on the fields and in the parking lots, to AV Heat." It is therefore beyond dispute that TAV is alleged to be liable for the death of the decedent based, in whole or in part, on the alleged failure of AV Heat to perform under the

Case No. 5:24-cv-1244-CV-SHK
THE PARTIES' JOINT BRIEF IN SUPPORT
OF JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT

FUA, thereby confirming that Nationwide owes a duty to defend TAV as an additional insured under the Policy. *See Acceptance Ins. Co. v. Syufy Enterprises*, 69 Cal.App.4th 321, 329-330 (1999) (held that the owner of a building where a contractor's employee fell through a hatch negligently maintained by the building owner was covered as an additional insured under an additional insured endorsement to the contractor's CGL policy, which made the owner an additional insured "but only with respect to liability arising out of" the contractor's work for the owner.)

**2.      TAV's Liability Was <u>at Least Potentially</u> Caused, in Whole <u>or in   Part</u>, by AV HEAT's Acts or Omission in Connection With the Field**

As set forth above, pursuant to the AI Endorsement in the Policy, Nationwide also owes a duty to defend TAV in the Underlying Action as an additional insured so long as there exists any potential that TAV's alleged liability for the death of the decedent was caused, in whole or in part, by the acts or omissions of AV Heat or others on its behalf in connection with the premises rented to AV Heat by TAV (i.e., in connection with the Field).

The phrase "in connection with" is not defined in the Policy; however, courts in California interpret it broadly similar to the commonly used phrase "arising out of" which merely "links a factual situation with the event creating liability and does not import any particular standard of causation or theory of liability into an insurance policy." *Davis v. Farmers Ins. Group*, 134 Cal.App.4th 100, 106–107 (2005).  Indeed, numerous courts in California have used the phrase "in connection with" when describing the broad meaning of "arising out of," thereby confirming it is to be interpreted equally as broadly. *See, e.g.*, *Id.* at 107 ("Rather, '[a]rising out of' are words of much broader significance than 'caused by.' They are ordinarily understood to mean 'originating from[,]' 'having its origin in,' 'growing out of' or 'flowing from' or in short, 'incident to, or having connection with'....'") (*citing Fibreboard Corp. v. Hartford Accident & Indemnity Co.*, 16 Cal.App.4th 492, 503–504 (1993)); *Fairchild*

*v. National Home Ins. Co.*, 17 Fed.Appx. 631, 633 (9th Cir. 2001) ("Although this provision in the BPA does not contain the broadest possible terms, that is, 'arising out of or related to,' 'regarding,' 'concerning,' or, as noted above, 'in connection with,' the language 'arises ... as to' is not unduly narrow."); *Homestead Ins. Co. v. Ryness Co.*, 15 F.3d 1085 (9th Cir. 1994) ("We have recognized, however, that California courts interpret the words 'arising from' broadly, and that they 'are ordinarily understood to mean 'originating from' 'having its origin in,' 'growing out of' or 'flowing from' or in short, 'incident to, or having connection with.'") (*Citing Continental Casualty Co. v. Richmond*, 763 F.2d 1076, 1080 (9th Cir.1985)); *Marquez Knolls Property Owners Assn., Inc. v. Executive Risk Indemnity, Inc.*, 153 Cal.App.4th 228, 236 (2007) ("We do not disagree, either with the cases or the principle that the term arising out of is interpreted 'more broadly than 'caused by' to include the notion of 'incident to or having connection with.'") (*Citing Continental Casualty*, 763 F.2d at 1080).

Here, it cannot reasonably be argued that AV Heat is not alleged to have been a cause of the accident based on its failure to comply with its obligations under the FUA in connection with its use of the Field. Immediately prior to the accident the decedent participated in AV Heat's scheduled football game at the Field, and was leaving the Field with the underlying plaintiffs to cross the adjoining road (Ottawa Road) when the accident occurred. Pursuant to the FUA, AV Heat was obligated to supervise its participants and guests at the Field *and adjoining property* during the "event," which at least potentially encompasses the arrival and departure of such participants and guests, and which AV Heat acknowledges are incidental to the participation in the scheduled activities at the Field. It is also expressly alleged that Ottawa Road, where the accident occurred, borders the Field and would thus, at least potentially, fall within the scope of AV Heat's supervision under the FUA. Nationwide's own claims manager, David Mansur, admitted as much in his claim note dated May 18, 2023—the day Nationwide issued its initial denial letter to TAV—wherein he noted that "[t]he

19

loss occurred in a street *adjacent to* an area the insured organization had used." (JAE 27 (emphasis added).)

The same is true for AV Heat's admitted failure to relay to its participants and guests that "[v]ehicles must be contained to designated right of ways and parking lots" as required under the FUA. The underlying plaintiffs have since expressly confirmed that "it was thought that the Town was solely responsible until [they] found that the Town of Apple Valley contractually delegated certain responsibilities, including the safety and security of the participants on the fields and in the parking lots, to AV Heat." This itself confirms that TAV was and is being sued in the Underlying Action because there exists at least a potential that the acts or omissions of AV Heat or others on its behalf in connection with the Field rented to it by TAV caused, in whole or in part, the subject accident resulting in the death of the decedent which triggers Nationwide's duty to defend.

It is ultimately immaterial whether or to what extent AV Heat is found to be liable for the accident resulting in the death of the decedent, or whether there exists any actual coverage for any damages awarded to the underlying plaintiffs in the Underlying Action under the Policy, as the duty to defend is based solely on whether there exists a bare potential for coverage. *See A-H Plating, Inc. v. American National Fire Ins. Co.*, 57 Cal.App.4th 427, 442–443 (1997) ("In short, an insurer's determination that an insured is not liable on a third party claim does not provide a basis for escaping the duty to defend. That duty extends to those insureds whom the insurer believes to be innocent of the conduct alleged in the third party complaint.") As explained above, Nationwide owes a duty to defend TAV as an additional insured so long as there exists *any conceivable possibility* that TAV's liability for the injuries at issue in the Underlying Action could have been "caused, in whole or in part, by [AV Heat's] acts or omissions or the acts or omissions of those acting on [AV Heat's] behalf: [¶] 1. In the performance of [AV Heat's] ongoing operations; or [¶] In connection with [AV Heat's] premises owned by or rented to [AV Heat]." That

Case No. 5:24-cv-1244-CV-SHK
THE PARTIES' JOINT BRIEF IN SUPPORT
OF JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT

possibility has affirmatively been established for all of the reasons set forth above, which is further confirmed by the fact that Nationwide agreed to and continues to defend AV Heat in the Underlying Action under the Policy after AV Heat was added as DOE 1 by the underlying plaintiffs.

**C.      Nationwide's Defense of AV Heat in the Underlying Action Itself Demonstrates That It Must Defend TAV as an Additional Insured**

Despite repeatedly disclaiming coverage for TAV as an additional insured based on Nationwide's erroneous argument that there was no potential act or omission by AV Heat relative to accident, Nationwide agreed to defend AV Heat once it was formally added as DOE 1. It is only where the facts and other information known or otherwise available to an insurer indicate that its insured faces liability for damages potentially covered under the policy that an insurer owes a duty to defend its insured until and unless the insurer can conclusively eliminate any such potential. By agreeing to defend AV Heat in the Underlying Action, Nationwide implicitly acknowledges that AV Heat is at least potentially liable for the accident resulting in the death of the decedent, and further that it cannot presently eliminate any such potential via exclusions or other provisions in the Policy. *See Waller*, 11 Cal.4th at 19 ("It has long been a fundamental rule of law that an insurer has a duty to defend an insured if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement. [Citation.] This duty, which applies even to claims that are 'groundless, false, or fraudulent,' is separate from and broader than the insurer's duty to indemnify….")

Indeed, Nationwide acknowledged the possibility that AV Heat has an obligation to defend and indemnify TAV in the Underlying Action pursuant to the FUA.   On April 16, 2024, Ms. Creel added a note in Nationwide's claim file indicating as follows:

> WAS LOOKING AT COMPLAINT CITY FILED AGAINST INSURED AND AGREED THAT THERE WILL BE A DUTY TO DEFEND BUT IT MAY BE UNDER AN ROR….**AS FOR ALLEGED**

21

**BREACH OF CONTRACT, IF THERE IS A FINDING THAT THE CONTRACT BETWEEN THE INSURED AND CITY IS DEEMED TO BE ENFORCEABLE THEN UNDER CONTRACTUAL LIABILITY, WE MAY BE LIABLE FOR THE CITY'S DEFENSE COSTS AND INDEMNITY**….

(JFA 38 (emphasis added).) Nationwide essentially conceded the potential that TAV's liability is based, in whole or in part, on AV Heat's acts or omissions in connection with its use of the Field pursuant to the FUA, which is sufficient to trigger Nationwide's obligation to defend TAV as an additional insured.  While Nationwide apparently argues that AV Heat was not responsible for the accident and that therefore it has no duty to defend. That is **not** how the duty to defend works in California. *See, e.g.*, *A-H Plating*, 57 Cal.App.4th at 442–443 ("In short, an insurer's determination that an insured is not liable on a third party claim does not provide a basis for escaping the duty to defend. That duty extends to those insureds whom the insurer believes to be innocent of the conduct alleged in the third party complaint.").

Ms. Creel's above statement establishes that Nationwide owes a duty to defend TAV as an additional insured because TAV's liability for the accident was at least potentially, caused, in whole or in part, by the acts or omissions of AV Heat in the performance of its ongoing operations and/or in connection with its use of the Field. Stated differently, the only way that AV Heat could be found to have breached the terms of the FUA for its failure and/or refusal to defend or indemnify TAV in the Underlying Action is if the accident resulting in the death of the decedent was somehow attributable to AV Heats acts or omissions in connection with the duties imposed on it under the FUA.

Nationwide's defense of AV Heat is thus further evidence demonstrating that it owes a duty to defend TAV as an additional insured, and that such a duty will continue until and unless Nationwide can conclusively establish based on undisputed facts that TAV's liability for the accident could **NOT** have been "caused, in whole or in part, by [AV Heat's] acts or omissions or the acts or omissions of those acting on [AV Heat's] behalf: [¶] 1. In the performance of [AV Heat's] ongoing operations; or

Case No. 5:24-cv-1244-CV-SHK
THE PARTIES' JOINT BRIEF IN SUPPORT
OF JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT

[¶] In connection with [AV Heat's] premises owned by or rented to [AV Heat]."

For the reasons addressed above, Nationwide cannot satisfy its burden of proving no potential for coverage, and it therefore has a duty to defend TAV in the Underlying Action as an additional insured and TAV's Motion should be granted.

## VI.    NATIONWIDE'S LEGAL ARGUMENT: NATIONWIDE HAS NO DUTY TO DEFEND TAV

### A.    Insurance Contracts Under California Law

#### 1.    Interpretation of Insurance Policies

Interpretation of an insurance policy is a question of law. *Powerine Oil Co. v. Superior Court*, 37 Cal. 4th 377, 390 (2005) (citations omitted). "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." *Foster-Gardner*, *Inc. v. National Union Fire Ins. Co.*, 18 Cal. 4th 857, 868 (1998) (internal quotation and citations omitted). "If contractual language is clear and explicit, it governs." *Id.* (internal quotation and citations omitted).

TAV cites *Producers Dairy* for the proposition that "doubts, uncertainties and ambiguities arising out of policy language ordinarily should be resolved in favor of the insured." (*See supra* V.A.I.) But *Producers Dairy* made clear that "this rule of construction is applicable only when the policy language is found to be unclear." 41 Cal. 3d at 912. *Producers Dairy* also emphasized that, in deciding whether there is an ambiguity, "words in an insurance policy must be read in their ordinary sense, and any ambiguity cannot be based on a strained interpretation of the policy language." *Id.* (finding no coverage because the policy was unambiguous); *see also MacKinnon*, 31 Cal. 4th at 648 ("[L]anguage in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract.") (cited by TAV).

/ / /

## 2.    The Duty to Defend

TAV has the burden to prove that Nationwide owes it a duty to defend and the court "will not indulge in a forced construction of the policy's insuring clause to bring a claim with in the policy's coverage." *Waller*, 11 Cal.4th at 16 (1995) (citation omitted). In determining the duty to defend, California courts consider "the policy, the complaint, and *all* facts known to the insurer from any source." *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 300 (1993); *see also Federal Ins. Co.*, 928 F.2d at 408 (duty to defend is based on "the facts available to the insurer from the complaint or other sources available to it at the time of the tender of defense") (cited by TAV). Thus, like here, the insurer may "decline to defend even where the bare allegations of the complaint suggest potential liability. This is so because the duty to defend, although broad, is not unlimited, but rather measured by the nature and kinds of risks covered by the policy." *Pulte*, 14 Cal. App. 5th at 1104 (cited by TAV); *see also Mirpad*, 132 Cal. App. 4th at 1074-75 (insurer did not owe a duty to defend) (cited by TAV); *MV Transportation*, 36 Cal. 4th at 655 ("[I]f . . . neither the complaint nor the known extrinsic facts indicate any basis for potential coverage, the duty to defend does not arise . . . .") (cited by TAV); *La Jolla Beach & Tennis Club, Inc. v. Indus. Indem. Co.*, 9 Cal. 4th 27, 39 (1994) (finding there is no duty to defend where third-party complaint did not "raise a single issue which could bring it within the policy coverage") (citation and quotation omitted).

Where the evidence shows that an underlying claim does not come within a policy's grant of coverage, courts not only deny the insured's motion for summary judgment, but also grant cross-motions for summary judgment in favor of the insurer. *Montrose*, 6 Cal. 4th at 301.

### B.    Nationwide Does Not Owe a Duty to Defend TAV.

The Policy provides liability coverage for claims alleging bodily injury from the team's covered operations, which the Policy defines as "scheduled, sanctioned, approved, organized and supervised practices, try-outs, clinics, games, playoffs, and

24

tournaments." (JAF 40, 41.) TAV was named as an additional insured under the Policy but only with respect to liability caused, in whole or in part, by AV Heat's acts or omissions in the performance of its ongoing operations, or in connection with the premises rented to AV Heat. (JAF 4.)

TAV is not entitled to additional insured coverage here because the underlying complaint does not allege that Andrews' death was caused by AV Heat's acts or omissions in the performance of its ongoing operations or in connection with the Field that AV Heat rented for football practice. The accident did not occur while AV Heat was having practice. It did not occur on the field AV Heat rented or anywhere else in the Park. It happened in a city street outside the Park when the Andrews family was walking back to where they had parked. There is no reasonable construction of the Policy that would expand its coverage from insuring against bodily injuries that occur during one of AV Heat's youth football practices to a vehicle/pedestrian fatality that occurs outside the Park in a city street after practice ends.

### 1.    The Accident Was Not Caused By AV Heat's Ongoing Operations.

Andrews was killed in a hit-and-run accident while crossing the street after leaving the Park. His surviving family members sued the driver and TAV, alleging that the accident was caused by (i) the driver's negligent driving; (ii) TAV's alleged failure to provide adequate parking at the Park which forced the Andrews family and other patrons to park off-site and cross inadequately lighted streets with no crosswalks; and (iii) TAV's alleged failure to safely manage, oversee, and coordinate vehicular traffic and pedestrians leaving the Park, leaving the street where Andrews was struck in an improper and dangerous condition. (JAF 14-16, 20, 43-44.)

The underlying complaint does not mention AV Heat. (JAF 46.) At most, it merely notes that the accident happened after Andrews had "finished assisting with coaching at his younger brother's peewee football game." (JAF 43.) That is not surprising since none of the allegations in the underlying complaint have anything to

do with AV Heat or its ongoing operations. AV Heat is a non-profit, youth football and cheerleading organization. It rented Field 8 at the Park to conduct football and cheer practices. (JAF 9.) Its operations have nothing to do with the design or construction of city parks, parking facilities, or streets. It is not responsible for making sure city streets are properly lit, have marked crosswalks, or reduced speed signs. And there are no allegations, let alone any evidence, that AV Heat is responsible for managing, operating, overseeing, or coordinating vehicular and pedestrian traffic on any of the streets near the Park—the underlying complaint makes those allegations only against TAV. (*See* JAF 43, 46.)

The best TAV can do is argue that the accident was somehow caused by AV Heat because its "ongoing operations" supposedly include the "arrival and departure" of its participants and guests. But the only thing TAV cites to support that proposition is a parental consent form signed by Sarah Andrews several months ***after*** the accident (February 2022) approving the participation of her younger son in team activities and agreeing to assume the risks of such participation, including transportation to and from such activities. If anything, the parental consent form underscores the absurdity of TAV's argument, which takes "ongoing operations" to the extreme and suggests that AV Heat was responsible for getting children to and from practice. Indeed, AV Heat's "ongoing operations" ended with the completion of practice.[1] The parents—not AV Heat—are responsible for getting their children home from practice.

Interpreting AV Heat's "ongoing operations" so broadly as to include the arrival and departure of its players is not reasonable. If that were the case, when would AV Heat's "ongoing operations" begin and when would they end? What if Andrews

---

[1] "Ongoing" is generally defined as "being actually in process" or "continuing." *Ongoing*, Merriam-Webster.com, 2025, https://www.merriam-webster.com/dictionary/ongoing.

Case No. 5:24-cv-1244-CV-SHK
THE PARTIES' JOINT BRIEF IN SUPPORT
OF JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT

had made it safely across the street but had been struck in the parking lot? What if the Andrews family had made it safely across the street to their car but were struck while pulling out of the lot? What if they had made it safely out of the lot but were rear-ended down the street? What if Andrews had been struck by a reckless driver while on his way *to* the Field? Under TAV's interpretation of "ongoing operations," TAV would be entitled to additional insured coverage for each of these scenarios. But that is clearly not what the Policy provides. TAV is covered as an additional insured for bodily injuries caused by AV Heat's acts or omissions while it is conducting football practice at the Field. TAV is not entitled to coverage for injuries sustained in a vehicle/pedestrian accident that has absolutely nothing to do with AV Heat's operations as a youth football organization.

TAV also argues that the accident was caused by the operations "required of" AV Heat "pursuant to the FUA." But the FUA did not include the rental of any parking lots or city streets. Nor did it make AV Heat responsible for the parking situation at the Park. TAV notes that Paragraph 30 of the FUA provides that "[v]ehicles must be contained to designated public right of ways and parking lots." But TAV omits the first sentence of Paragraph 30, which provides that "Renter shall not drive motorized vehicles on ballfields or turf areas." (JAF 13.) Thus, when read as a whole, Paragraph 30 clearly means "don't put vehicles on the grass." It has nothing to do with where guests should park when coming to the Park. And it certainly does not obligate AV Heat to make "arrangements to ensure that its members and guests were parking in safe and designated areas" as TAV asserts.

Indeed, the underlying complaint alleges that the parking lots provided by TAV at its Park are insufficient to accommodate everyone visiting the Park and that TAV is aware of the parking shortage. And it is undisputed that TAV did not provide any instruction or guidance to AV Heat as to where "overflow" parking should be directed. (JAF 32.) It is thus absurd to suggest that AV Heat was somehow obligated to direct, control, or supervise where people visiting the Park should park if the

parking lots provided by TAV were full.

The FUA likewise did not require AV Heat to direct traffic on the streets surrounding the Park. The indemnity provision in the FUA provides that AV Heat shall indemnify TAV against claims arising from activities only "during such time" as AV Heat is using the Field. (JAF 11.) Thus, although AV Heat agreed to supervise its players during practice, the FUA did not obligate AV Heat to supervise parents, guests, spectators, or anyone else coming to or leaving the Park. It certainly did not require AV Heat to make sure the surrounding streets were adequately lit or the speed limits appropriate. AV Heat had neither the authority nor the ability to control, alter, or direct traffic on Ottawa Road.[2]

TAV cites only the *Syufy* case in support of its argument that Andrews' death was caused by AV Heat's ongoing operations. But *Syufy* does not help TAV. In *Syufy*, a company hired a contractor to work on its building. 69 Cal. App. 4th at 324. The contractor's employee, who had been working on the building's roof, was injured while descending through a defective hatch that provided the only roof access. *Id.* After the employee sued the company, the company sought coverage from the contractor's liability insurer pursuant to an additional insured endorsement providing the company with coverage with respect to liability "arising out of" the contractor's "work." *Id.* The court held that the employee's injuries "arose out of" the work he was performing on the roof because he was engaged in the activity called for under the work contract and it was the *performance of that activity* that led to his injury. *Id.* at

---

[2] TAV repeatedly cites statements made by Andrews' counsel that he now believes TAV delegated "certain responsibilities, including the safety and security of the participants on the fields and in the parking lots, to AV Heat." Those statements, of course, were made only after Andrews' counsel discussed with TAV's counsel "the prospect of bringing AV Heat into the case" and TAV's "theories of liability." (JAF 50-51.) Such unfounded beliefs of counsel which run directly contrary to the plain terms of the FUA do not trigger a duty to defend.

328. Indeed, the court specifically found that the employee "could not have done the job without passing through the hatch." *Id.*

The policy language and the facts in *Syufy* are quite different than here. Unlike the broad triggering language in *Syufy* ("arising out of"), coverage exists here only if TAV's liability is "caused by" AV Heat's acts or omissions in the performance of its ongoing operations. *See Continental Cas. Co. v. City of Richmond*, 763 F.2d 1076, 1080 (9th Cir. 1985) (California courts interpret "arising out of" more broadly than "caused by"); *Advent, Inc. v. National Union Fire Ins. Co. of Pittsburgh*, 6 Cal. App. 5th 443, 462 (2016) (finding there must be some actual causal connection between the accident and the named insured's operations to trigger coverage). And, unlike in *Syufy*, the accident here did not occur while Andrews was engaged in any activities related to AV Heat's operations. The accident did not occur while Andrews was coaching. It did not occur while Andrews was on Field 8 or anywhere else in the Park. His presence in the street where the accident occurred was simply the result of where his family chose to park that night. It had nothing to do with AV Heat's operations.

In *St. Paul Fire and Marine Ins. Co. v. American Dynasty Surplus Ins. Co.* ("*St. Paul*"), the court distinguished *Syufy* based on a rationale instructive to this case. 101 Cal. App. 4th 1038, 1051–52 (2002). In *St. Paul*, a general contractor sought indemnity from its electrical subcontractor for a claim by a subcontractor employee injured on the jobsite. *Id.* at 1045. The employee was injured in an explosion on the jobsite that had nothing to do with the work of the subcontractor or its employee. *Id.* The parties' indemnity agreement required the subcontractor to indemnify the general contractor for liability arising from "any act or omission" of the subcontractor. *Id.* at 1044. The subcontractor's insurance policy also provided additional insured coverage to the general contractor for claims "which *may arise out of or result from [Sasco's] operations under [the Subcontract]*." *Id.* at 1055 (emphasis in original). The court held that neither the subcontractor nor the subcontractor's insurer owed any obligations to the general contractor for the underlying claim. *Id.* at 1050–56. Most

notably, the court found that, unlike in *Syufy*, the subcontractor's employee was not injured while performing some act directly related to the work called for by the subcontract. *Id.* at 1052. Only "the employee's mere incidental presence in a 'zone of danger'" having "nothing to do with the work called for in the subcontract" was involved in *St. Paul*. *Id.* (emphasis omitted). Moreover, like the additional insured endorsement in this case, the indemnity provision at issue in *St. Paul* applied to circumstances where the subcontractor "has at least *some* control and where it is engaged in activity that is causally related in some manner to the injury." *Id.* at 1053.

The facts here are also far more similar to those in *Christ the King Regional High Sch. v. Zurich Ins. Co. of N. Am.*, 91 A.D.3d 806 (N.Y. App. 2012). In that case, a high school rented a portion of its premises (an auditorium and three classrooms) to the named insured for a dance competition. *Id.* at 806. An individual attending the competition was injured when she fell while walking on a sidewalk between the school and the parking lot. *Id.* at 806-07. The named insured's policy provided coverage to the high school as an additional insured for "liability arising out of [the named insured's] operations." *Id.* at 809. The court held that the named insured's "operations" "consisted of conducting a dance competition in the school auditorium and three classrooms. Bodily injury occurring outside the leased premises, in an area which [the named insured] had no responsibility to maintain or repair, was not a bargained-for risk … Rather, [the named insured's] operations at the school merely furnished the occasion for the accident." *Id.* (internal quotations and citations omitted). The same is true here.

The court in *Scottish & York Int'l Ins. Gr. v. Ensign Ins. Co.*, 709 P.2d 397 (Wash. App. 1985) likewise found no coverage under similar facts and insuring language. In that case, the named insured rented a county park for a water celebration involving hydroplane races. *Id.* at 397. The insured's liability policy named the county as an additional insured with respect to the named insured's "operations." *Id.* at 399. During the celebration, a guest was seriously injured after diving into a river in the

30

park. *Id*. The guest subsequently alleged that the county failed to maintain the property in a reasonably safe condition and failed to warn of the hazards of swimming where he was injured. *Id.* at 398. The court held that the county was not entitled to additional insured coverage under the renter's policy because the guest's injuries were not caused by "operations performed by or on behalf" of the named insured. *Id.* at 399. "The allegations of negligence are based on the failure to maintain the river or shore in a reasonably safe condition for swimming or to post or otherwise warn of hazards." *Id.* Like here, such allegations are "unrelated to the operations, activities, and programs" of the named insured. *Id.*

### 2. The Accident Was Not Caused By AV Heat's Acts or Omissions in Connection With the Premises It Rented.

TAV also argues that it is entitled to additional insured coverage because its liability for Andrews' death supposedly was caused by AV Heat's acts or omissions in connection with the Field it rented. TAV asserts that the phrase "in connection with" is interpreted similarly to "arising out of" and does not require "any particular standard of causation." But that is not true. Even assuming that "in connection with" has the same meaning as "arising out of," California courts have made clear that "arising out of" "requires more than 'but for' causation." *Transcon. Ins. Co. v. Ins. Co. of the State of Pa.*, 148 Cal. App. 4th 1296, 1308 (2007) (citation and quotation omitted); *Fireman's Fund Ins. Co. v. Discovery Prop. & Cas. Ins. Co.*, No. C 08-03079 WHA, 2009 WL 2591394 (N.D. Cal. Aug. 21, 2009).

In *Fireman's Fund*, a woman fell on a sidewalk adjacent to a mall housing a bookstore where she was going for a book signing event. *Id.* at *2. The court held that the mall owner was not entitled to additional insurance coverage for the accident under the bookstore's liability policy because the accident did not "arise out of" the bookstore's use of its leased property. *Id.* at *4. The court found that the bookstore "was not instrumental in any of the acts that led to the injury" because the bookstore had no control over the site where the accident occurred, no obligation to maintain the

31

sidewalk, and no control over the route the injured woman chose to take to get to the bookstore. *Id.* Indeed, "the *only* connection" between the accident and the bookstore was that the injured woman "happened to be walking to the bookstore" when she fell. *Id.* The court held that such "but for" causation "is not enough" and that the "connection" between the bookstore's use of its leased premises and the accident was "too thin" to support a finding of coverage. *Id.* The "remoteness" of the accident—which occurred on a public sidewalk 844 feet from the bookstore—further established that "there was no causal connection or relationship" between the leased premises and the accident. *Id.*

Numerous courts outside California similarly have declined to find additional insured coverage for liability that did not arise out of the named insured's use of the rented premises. For example, in *Misiti, LLC v. Travelers Prop. Cas. Co. of Am.*, 33 A.3d 783 (Conn. App. 2011), the court held that a property owner was not entitled to additional insured coverage under its tenant's liability policy for injuries sustained by a woman who fell while walking on the owner's property after leaving the tenant's tavern. The court found that the woman's injuries did not arise from and were not "causally related" to the tenant's "use of the tavern." *Id.* at 790. Indeed, the woman's visit to the tavern merely preceded her use of other property owned by the landlord where she was injured. *Id.* at 792 (although "these occurrences followed sequentially, there is no allegation that they were connected causally, one resulting from the other").

In *Rensselear Polytechnic Institute v. Zurich Am. Ins. Co.*, 176 A.D.2d 1156 (N.Y. App. 1991), a company rented a university fieldhouse to conduct a figure skating performance. A patron who had attended the show fell on a walkway after exiting the fieldhouse. The court found that the university was not entitled to additional insured coverage under the company's liability policy because the accident did not "arise out of" the company's use of the rented premises. *Id.* at 1151; *see also Minges Creek v. Royal Ins. Co. of Am.*, 442 F.3d 953, 957–58 (6th Cir. 2006) (holding

additional insured endorsement did not cover injury sustained in a parking lot because the lot was not part of the premises used by the tenant); *Northbrook Ins. Co. v. Am. States Ins. Co.*, 495 N.W.2d 450, 453 (Minn. App. 1993) (finding additional insured endorsement did not cover injuries occurring in alley behind named insured's bakery in a shopping center).

The facts of this case are similar to those in *Fireman's Fund*, *Rensselear*, and the other cases cited above. The accident did not happen on the Field rented to AV Heat. It did not happen during AV Heat's use of the Field for football practice. It did not even happen in the Park. It happened in a city street outside the Park after practice ended. As in the cases cited above, AV Heat had no control over the street where the accident occurred. Nor did AV Heat have control over where the Andrews family chose to park or the route they chose to take to get back to their vehicle. The only "connection" that AV Heat had to the accident is that Andrews happened to have been at the Park for a football practice. But AV Heat's use of the Field had absolutely nothing to do with the accident. The accident would have happened the exact same way had Andrews been leaving the Park after watching a little league baseball game, supervising his younger siblings at the playground, or using the skate park.

TAV tries to draw some connection between the accident and AV Heat's use of the Field by arguing that the FUA obligated AV Heat to supervise its players "at the facility and adjoining property during the event." But the "facility" that AV Heat rented was the Field. It did not rent the entire Park. It makes sense that AV Heat would be responsible for supervising its players while they were practicing on the Field or on adjoining property within the Park. But that certainly does not mean AV Heat was obligated to serve as a crossing guard outside the Park for those leaving *after* its practice. Indeed, the FUA confined AV Heat's use of the Field to 6:00pm to 8:00pm and mandated that those hours of use must include set-up and take-down. (JAF 42.) There is nothing in the FUA suggesting that the "event" (defined by the FUA as "football & cheer practice") extended beyond 6:00pm to 8:00pm to include

the transportation of players to or from the Park.

Nor did the FUA make AV Heat responsible for controlling, altering, or directing traffic on any of the streets near the Park. Indeed, as a matter of public policy, TAV should not be allowed to contractually reassign its responsibilities to maintain safe roadways. To do so would disincentivize municipalities from acting in the interest of public safety. As such, although "adjoining property" could reasonably be interpreted to include the adjacent fields, playgrounds, and picnic areas *within* the Park, it cannot as a matter of law, common sense, or public policy mean the public roadways *outside* the Park.

### 3. Nationwide's Defense of AV Heat Does Not Require It to Defend TAV.

Nationwide's defense of AV Heat in the Underlying Action is irrelevant to TAV's additional insured claim. The two claims are distinct and TAV bases this circular argument on its own self-serving indemnity claim.[3] An insurer's duty to defend under California law must be based on facts, not legal conclusions. *See Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1114 (1995) (finding the duty to defend is not triggered by speculation "about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date"). This type of pleading into coverage argument has long been rejected by California courts. *See Hurley Constr. Co. v. State Farm Fire & Cas. Co.*, 10 Cal. App. 4th 533, 538 (1992) ("Our Supreme Court, anticipating imaginative counsel and the likelihood of artful drafting, has indicated that a third party is not the arbiter of the

---

[3] TAV cites to a Nationwide claims note referring to Nationwide's potential obligations *to AV Heat for AV Heat's contractual liability to TAV*. (JAF 36, incorrectly cited as JAF 38). AV Heat's claim to Nationwide for its contractual liability to TAV is distinct from TAV's claim to Nationwide for it's liability in the Underlying Action under the more limited additional insured endorsement.

policy's coverage.") (citing *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 276 (1966)).

TAV is not the arbiter of coverage under AV Heat's Nationwide policy. Neither TAV's indemnity claim against AV Heat, nor Nationwide's defense of AV Heat therein, has any bearing on the issues before the Court in this motion.

## VII.    TAV'S CONCLUSION

For all the foregoing reasons, Nationwide has a duty to defend TAV in the Underlying Action as an additional insured under the Policy as there exists, at minimum, a ***potential*** that the underlying accident was caused, in whole ***or in part***, by the acts or omissions of AV Heat or those acting on its behalf in the performance of its ongoing operations and/or in connection with the Field rented to AV Heat by TAV pursuant to the FUA. Accordingly, TAV respectfully requests that this Court grant its request for partial summary judgment and order that Nationwide has a duty to defend TAV in the Underlying Action.

## VIII.    NATIONWIDE'S CONCLUSION

For the foregoing reasons, Nationwide respectfully requests that the Court deny TAV's motion for partial summary judgment and grant Nationwide summary judgment on Counts 1 and 2 of TAV's First Amended Complaint.

Dated: April 24, 2025

**HIRSCH CLOSSON, APLC**

By: _____
Robert V. Closson
Christopher T. Hicks
Attorneys for Plaintiff
TOWN OF APPLE VALLEY

Dated: April 25, 2025

**DENTONS US LLP**

By:  *Natalie M. Limber*
        Kelly R. Graf
        Natalie M. Limber
        Sabrina Chow
        Attorneys for Defendant
        NATIONWIDE MUTUAL
        INSURANCE COMPANY

36

**TAV'S CERTIFICATE OF COMPLIANCE [L.R. 11-6.2.]**

The undersigned, counsel of record for Plaintiff Town of Apple Valley (TAV), certifies that TAV's portion of the brief, exclusive of the caption page, tables of contents and authorities, signature blocks and Nationwide's portion of the brief, contains 6,991 words, which:

___   complies with the word limit of L.R. 11-6.1.

_x_   complies with the 7,000-word limit set by the Court's Order Regarding Motions for Summary Judgment [Dkt. 33].

April 7, 2025

_____
Christopher T. Hicks

Case No. 5:24-cv-1244-CV-SHK
THE PARTIES' JOINT BRIEF IN SUPPORT
OF JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT

**NATIONWIDE'S CERTIFICATE OF COMPLIANCE [L.R. 11-6.2.]**

The undersigned, counsel of record for Defendant Nationwide Mutual Insurance Company (Nationwide), certifies that this brief contains 5,275 words, which:

___ complies with the word limit of L.R. 11-6.1.

x_ complies with the 7,000-word limit set by the Court's Order Regarding Motions for Summary Judgment [Dkt. 33].

April 21, 2025

*Natalie M. Limber*

_____

Natalie M. Limber

38